## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PREMIUM HOSPITALITY, L.L.C., et al.**          **CIVIL ACTION**

**VERSUS**                                                          **NO. 12-0779**

**ASTRA CAPITAL FUNDING, et al.**                **SECTION: "G"(5)**

### ORDER AND REASONS

Before the Court is Defendant Fidelity National Title Company's ("Fidelity") "Motion to Dismiss Pursuant to Federal Rule 12(b)(6),"[1] wherein it seeks the dismissal of all claims against it here. After considering the complaint, the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will grant in part and deny in part the pending motion.

### I. Background

#### *A. Factual Background*

Plaintiffs are Premium Hospitality, L.L.C. ("Premium Hospitality"), Kajal, Incorporated ("Kajal"), and Ashok Patel ("Patel") (collectively, "Plaintiffs").[2] Defendants are Astra Capital Funding, Inc. ("Astra"), John Burton Ramsey ("Ramsey"), Sandeep Nagin Patel ("Sandeep Patel"), BP Communications LTD ("BP"), World Trade Holdings, LLC ("World Trade"), and Fidelity.[3]

Patel acted as President of both Premium Hospitality and Kajal, which are both engaged in the hotel industry. In that capacity, Patel sought loans to finance specific projects concerning each

---

[1] Rec. Doc. 29.

[2] Rec. Doc. 26 at ¶ 3 (Amended Complaint).

[3] *Id.* at ¶ 4.

corporation.[4] Patel contacted Mortgage Corp, whose agent was Defendant Sandeep Patel, who in turn referred him to Astra. Plaintiffs claim that they reached an agreement with Astra, whereby Premium Hospitality would receive a $1,150,000.00 loan and Kajal would receive a $1,680,00.00 loan.[5] According to Plaintiffs, two letters of commitment, dated November 17, 2011, were drafted and signed by both parties, and a $200,000 escrow deposit for each loan was requested as a down payment.[6] Fidelity was designated to hold the escrow deposit funds.[7] On December 2, 2011, the escrow funds were wired to Fidelity, and the loans were scheduled to close on February 24, 2012.[8] However, according to Plaintiffs on December 6, 2011, Fidelity received a "Conditional Letter of Guarantee" purportedly from Ron My of Wells Fargo Bank, N.A., and the funds were released from the escrow account. Plaintiffs claim a $300,000 wire transfer was sent to BP and a $100,000 payment was sent to World Trade.[9] Ramsey signed the wire transfer. Plaintiff claim that "[t]hese funds then subsequently disappeared."[10]

Plaintiffs claim that "violations of law have occurred in this matter, and comprise fraud, breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, detrimental reliance, and failure to perform due diligence. Plaintiffs bring causes

---

[4] *Id.* at ¶ 5.

[5] *Id.* at ¶ 6.

[6] *Id.*

[7] *Id.* at ¶ 7.

[8] *Id.*

[9] *Id.* at ¶ 8.

[10] *Id.*

of action under the Louisiana Credit Agreement Statute,[11] and Louisiana Civil Code articles 1983, 1759, and 1967.[12] Specifically, with regard to Fidelity, Plaintiff claims that it is "liable to Plaintiffs herein for breach of fiduciary duty, detrimental reliance, and failure to perform due diligence. [It was] the repository for the escrow fund and allegedly conducted due diligence prior to the transfer of the escrow account by assuring plaintiffs of the integrity of the escrow transfer."[13]

### B. Procedural Background

Plaintiffs filed the original complaint in this matter on March 23, 2012, invoking this Court's diversity jurisdiction.[14] On August 9, 2012, Fidelity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[15] Plaintiffs filed an opposition on September 4, 2012.[16] On March 6, 2013, this Court discovered certain pleading deficiencies that created some doubt as to whether this Court had subject matter jurisdiction. In response, the Court ordered Plaintiffs to file an amended complaint to properly allege the citizenship of all parties, and denied Defendants first motion to dismiss without prejudice, with leave to refile the motion after such time as the Court determined it had subject matter jurisdiction.[17]

---

[11] La. R.S. § 6:1122.

[12] Rec. Doc. 26 at ¶ 9.

[13] *Id.* at ¶ 12.

[14] Rec. Doc. 1. In the original complaint, Plaintiffs mistakenly claimed that jurisdiction "is proper under the diversity provision of 28 U.S.C. § 1345. *See id.* at ¶ 2. Plaintiffs correct this mistake in the amended complaint. *See* Rec. Doc. 26 at ¶ 2.

[15] Rec. Doc. 9.

[16] Rec. Doc. 13.

[17] Rec. Doc. 22.

On March 13, 2013, Plaintiffs filed an amended complaint.[18] Further, on March 28, 2013, Fidelity filed a memorandum in support of subject matter jurisdiction, alleging the citizenship of all parties and demonstrating complete diversity.[19] On that same day, Fidelity refiled their motion to dismiss.[20] Plaintiffs did not refile an opposition to this motion to dismiss, and therefore the Court will construe their opposition to Fidelity's first motion to dismiss as the opposition to the pending motion.

## II. Parties' Arguments

### A. Fidelity's Arguments in Support of Dismissal of Plaintiff's Claims Against It

In support of the pending motion, Fidelity seeks the dismissal of Plaintiff's claims against it for breach of fiduciary duty, failure to perform due diligence, and detrimental reliance, claiming Plaintiffs have failed to a state a claim upon which relief can be granted for each cause of action.[21] Fidelity argues that Plaintiffs have "sued Fidelity as a backstop," in case they cannot recover against the other named defendants, and that the "sole fact alleged in support of [their] claims is that Fidelity was the 'the repository for the escrow fund and allegedly conducted due diligence prior to the transfer of the escrow account by assuring plaintiffs of the integrity of the escrow transfer.'"[22] Therefore, Fidelity contends that Plaintiffs have failed to state a claim for which relief can be granted regarding the claims against Fidelity.

---

[18] Rec. Doc. 26.

[19] Rec. Doc. 27.

[20] Rec. Doc. 29.

[21] Rec. Doc. 29-1 at p. 1.

[22] *Id.* at p. 4.

Fidelity also notes that Patel and Astra entered into an Escrow Agreement with Fidelity on or around December 1, 2011.[23] Fidelity recognizes that on a motion to dismiss a court typically should only consider the pleadings, but cites Fifth Circuit precedent that a court may consider documents attached to a motion to dismiss if they are cental to the plaintiff's claims.[24] Fidelity highlights that under the Escrow Agreement, its obligations and liability are limited:

### 23. CLARIFICATION OF DUTIES
Fidelity National Title Company – Builder Services serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.[25]

First, Fidelity contends that California law governs Plaintiffs' claims against it.[26] Because this Court sits in Louisiana, Fidelity recognizes that Louisiana's approach to conflict of law applies. Fidelity contends that in consideration of Louisiana's specific choice of law provisions and relevant case law, California law should apply because Fidelity is domiciled in California, the Escrow

---

[23] *Id.* at p. 2.

[24] *Id.* n. 5 (citing *Collins v. Morgan Stnaley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)).

[25] *Id.* at pp. 2-3 (citing Escrow Agreement, Rec. Doc. 29-2).

[26] *Id.* at p. 6.

Agreement was drafted in California, performance under the Escrow Agreement took place in California, and the Escrow Agreement references California law.[27]

Applying California law, Fidelity avers that "an escrow holder is the agent and fiduciary of the parties to the escrow."[28] However, Fidelity argues that because the escrow holder is a "dual agent" for both parties to the escrow, the escrow holder's duty is limited "to the obligation [] to carry out the instructions of each of the parties to the escrow," and therefore Fidelity cannot be held liable for breach of fiduciary duty or failure to provide due diligence based on Plaintiff's allegations.[29] Moreover, Fidelity notes that the California Supreme Court has stated that "'[a]bsent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions.'"[30] Further, Fidelity claims that many California appellate courts have held that an escrow holder's duty is confined to acting in accordance with the escrow instructions, and there is no duty to notify the escrow parties or investigate suspicious facts that could affect the parties.[31]

Fidelity contends that these causes of action nevertheless fail even if Louisiana law were to apply, because "the fiduciary duty of an escrow holder is the same as that under California law."[32] Therefore, Fidelity argues that the breach of fiduciary duty and failure to perform due diligence claims should be dismissed:

---

[27] *See id.* at pp. 6-8.

[28] *Id.* at p. 8 (citing *Siegel v. Fid. Nat'l Title Ins. Co.*, 54 Cal. Rptr. 2d 84, 91 (Cal. Ct. App. 2d Dist. 1996)).

[29] *Id.* at pp. 8-9 (citing *Schaefer v. Mfrs. Bank*, 163 Cal. Rptr. 402, 407 (Cal. Ct. App. 2d Dist. 1980)).

[30] *Id.* at p. 9 (citing *Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 41 P.3d 548, 552 (Cal. 2002)).

[31] *See id.* at pp. 9-13 (citing cases).

[32] *Id.* at p. 13 (citing *Newman v. Great Am. Mort. Invs.*, No. 87-CA-842, 1988 WL 903143 (La. Ct. App. July 26, 1988) (unpublished)).

As noted above, an escrow agent may be held liable to the extent that the escrow agent fails to follow the parties' instructions. Here, the Complaint does not allege that Fidelity did not follow the instructions provided to it. Instead, the Complaint alleges that Fidelity released the Escrow Funds pursuant to a Conditional Letter of Guarantee from Wells Fargo. Without alleging whether Fidelity failed to follow the escrow instructions, Plaintiffs' breach of fiduciary duty and failure to perform due diligence claims are merely conclusory and should be dismissed as a matter of law.[33]

Next, Fidelity contends that Plaintiffs have failed to state a claim for detrimental reliance against it.[34] Fidelity argues that the complaint "does not allege **any** facts that an alleged representation by Fidelity changed Plaintiffs' position to their detriment," which would be necessary to state a cause of cation under either California or Louisiana law.[35] However, Fidelity further argues that even if Plaintiffs relied on a representation by Fidelity, Plaintiffs were not reasonable or justified in doing so, because a party to an escrow agreement is "not reasonable in relying on any alleged statements that [are] contrary to the narrow duties of escrow holders."[36] Again, Fidelity also stresses that the Escrow Agreement specifically stated that Fidelity was not accountable or liable for the sufficiency or correctness of any of the instruments deposited in escrow. Finally, Fidelity argues that the detrimental reliance claim fails under both California and Louisiana law because such relief is equitable, and generally applicable only when the plaintiff does not have a breach of contract claim.[37]

---

[33] *Id.* (footnote omitted).

[34] *Id.* at p. 15.

[35] *Id.* at p. 18 (emphasis in original).

[36] *Id.* (citing *Oakview Terrace v. Owens Fin. Group, Inc.*, No. C-93-2446, 1994 WL 173928 (N.D. Cal. Apr. 19, 1994)).

[37] *Id.* at p. 19.

## B. Plaintiffs' Arguments in Opposition

In opposition, Plaintiffs provide detail about their allegations against Fidelity.[38] Plaintiffs claim that the following day after Patel and Ramsey signed the Escrow Agreement and specified that Wells Fargo Bank would guarantee the funds, on December 2, 2011, Fidelity received an incoming wire transfer in the amount of $400,000 that was credited to Patel's escrow account.[39] Thereafter, in an email dated December 6, 2011, Natalie Priestley ("Priestley"), a Vice President and Senior Commercial Escrow Officer with Fidelity, informed Patel and Ramsey that she received the Conditional Letter of Guarantee from Ron My of Wells Fargo.[40] The next day, Priestley again contacted Patel and Ramsey and stated:

> I spoke with Ron My this morning and confirmed that the Conditional Letter of Guarantee that I received yesterday is, in fact, an official letter from Wells Fargo and was signed by him personally.[41]

Plaintiffs claim that "[w]ith the assurance that his interests were protected by this verification, Ashok Patel signed an Astra Capital Funding Fund Control Agreement authorizing Fidelity National Title Company to release the funds held in escrow to the 'Private Equity Partners of ASTRA.'"[42] That same day, according to Plaintiffs, Ramsey contacted Fidelity and secured the transfer of the escrow funds. Plaintiffs claim that Patel was unable to contact Ramsey during this

---

[38] Rec. Doc. 13 at p. 2. Again, the Court notes that this opposition was filed in response to Fidelity's first motion to dismiss that was dismissed without prejudice. Plaintiffs never filed a separate opposition after Fidelity filed the pending motion.

[39] *Id.*

[40] *Id.* at pp. 2-3.

[41] *Id.* at p. 3 (citing Rec. Doc. 13-2).

[42] *Id.*

time "and it became obvious that the loans would not be forthcoming, and more importantly that [Patel's] funds had disappeared."[43]

Patel subsequently contacted Wells Fargo about the Conditional Letter of Guarantee and hired an investigator. Plaintiffs claim that they discovered that Ron My, who allegedly sent the letter to Fidelity, is a real person and employee of Wells Fargo, but he had not actually sent the Conditional Letter of Guarantee.[44] Plaintiffs allege that the "document was bogus, and the perpetrators had simply put a prearranged telephone number on the document, complete with pre-planned responses to pose as both a Wells Fargo office and Ron My."[45] "With this false telephone number in place, John B. Ramsey merely contacted Natalie Priestly and requested that she verify the Conditional Letter of Guarantee by utilizing the same telephone number."[46]

Regarding the choice of law analysis, Plaintiffs submit that Louisiana Civil Code article 3515, including the 1991 Revision comments concerning dépeçage,[47] article 3537, and article 3540, are "relevant to the instant matter."[48] Plaintiffs further cite a case from the Western District of Louisiana, where it claims the court applied dépeçage and found that a breach of fiduciary duty claim may be subject to Louisiana law.[49] Plaintiffs provide no further analysis of the Louisiana

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at pp. 3-4.

[46] *Id.* at p. 4.

[47] "Dépeçage" refers to the scenario where a choice of law analysis results in the laws of different states being applied to different issues within the same dispute. Comment (d) to La. Civ. Code art. 3515; *Favaroth v. Appleyard*, 2000-0359 (La. App. 4 Cir. 5/21/01); 785 So. 2d 262, 265.

[48] Rec. Doc. 13 at pp. 10-11.

[49] *Id.* at pp. 11-12 (citing *Thomas v. Fid. Brokerage Servs.*, 977 F.Supp. 791, 796 (W.D. La. 1997)

choice of law provisions it highlights, except to state that "Plaintiffs Ashok Patel and Kajal, Incorporated are domiciled in Louisiana," "[a] significant loss was incurred by a Louisiana resident and Louisiana corporation," and Fidelity "conducts business throughout the country and such status implies instances where the company may be subject to other state law."[50]

Addressing their claim for detrimental reliance against Fidelity, Plaintiffs claim that under Louisiana law, a plaintiff must prove: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance.[51] Plaintiffs then provide myriad excerpts from Louisiana appellate courts exploring different aspects of this cause of action.[52] At the end of this survey, Plaintiffs aver that the "specific facts in the instant matter coincide with the doctrine of detrimental reliance," because Fidelity owed a duty to Plaintiffs to convey true information to them as the relying parties, and allegedly caused Plaintiffs harm as a result of Priestley's alleged statement.[53]

Concerning their breach of fiduciary duty/failure to perform due diligence claim, Plaintiffs note that a plaintiff must allege fraud, breach of trust, or an action outside the limits of the fiduciary's authority in order to state a claim upon which relief can be granted.[54] Plaintiffs attempt to rebut Fidelity's arguments made in support of the pending motion:

> The general argument made by Fidelity National Title Company is that an escrow
> company has protection of law based upon the operation characteristics of their

---

[50] *Id.* at p. 12.

[51] *Id.* at p. 6 (citing *Clark v. America's Favorite Chicken Co.*, 916 F.Supp. 586, 591 (E.D. La. 1996), *aff'd* 220 F.3d 295 (5th Cir. 1997)).

[52] *See id.* at pp. 6-9.

[53] *Id.* at p. 9.

[54] *Id.* at p. 12 (citing *Thomas*, 977 F.Supp. at 794-95).

industry. The duty implied is only to process the pertinent documents and provide the holding accounts for escrow funds. Yet an employee departed from this basic function to offer information on the validity of a document that gave cause for justifiable reliance upon the information on the part of the Plaintiffs. This reliance became acutely manifest when Ashok Patel waited for the loan closings after being assured that the other party had provided a genuine Conditional Letter of Guarantee that protected his interest. Meanwhile, as several weeks passed, his $400,000.00 had disappeared into the corporate maze previously described herein.

John B. Ramsey, the opposite party in the transaction, unilaterally made the request to call the number provided on the Conditional Letter of Guarantee. An employee followed his instructions, and choose to inform Ashok Patel with an e-mail assuring the viability of the document. Essentially, this action changed the nature of the relationship in a number of ways. There was an exercise of diligence not particularly provided for in the contracted services. The act gave cause for detrimental reliance on the part of the plaintiffs. By respondeat superior, the employee's action becomes the responsibility of the Fidelity National Title Company. Also, this event changed the relationship of the parties with respect to fiduciary duty and due diligence.[55]

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[56] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[57] Although a court must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[58] "Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[59] "Conclusory allegations

---

[55] *Id.* at pp. 13-14.

[56] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[57] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969).

[58] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[60] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."[61] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.[62] While in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, the Fifth Circuit has instructed that consideration of documents attached to the motion to dismiss may also be considered when they are referred to in the complaint and are central to the plaintiff's claim.[63]

## IV. Law and Analysis

### A. Choice of Law

Before this Court can decide whether Plaintiffs have made claims upon which relief can be granted against Fidelity, the Court must determine the law that must be applied to Plaintiffs' claims.[64]

---

[60] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

[61] *Ashcroft*, 556 U.S. at 678-79 (2009) (internal quotation marks omitted).

[62] *Twombly*, 550 U.S. at 555-56.

[63] *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *see also Collins*, 224 F.3d at 498-99 (dictum);

[64] While not addressed by either party, the Court notes that if the laws of the two proposed states do not conflict, a choice of law analysis is unnecessary, and a court simply applies the law of the forum state. *See Schneider Nat. Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002). As will be explained in greater depth below, upon this Court's review of California and Louisiana jurisprudence, California law is much more explicit than the law of Louisiana that the duty of escrow holders is limited. *See infra* Part IV.B.1. As this distinction is particularly relevant to the claims at issue in the pending motion, a choice of law analysis is appropriate here.

As a federal court sitting in diversity, this Court must apply the choice of law principles of the state

in which it sits.[65] A district court's choice of law determination is reviewed *de novo*.[66] The Fifth

Circuit "give[s] no deference to the district court's determination of state law."[67]

### 1. Relevant Choice of Law Provisions

Louisiana, the state in which this Court sits, generally sets out its choice of law principles

in Louisiana Civil Code article 3515:

> Except as otherwise provided in this Book, an issue in a case having contacts with
> other states is governed by the law of the state whose policies would be most
> seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant
> policies of all involved states in the light of: (1) the relationship of each state to the
> parties and the dispute; and (2) the policies and needs of the interstate and
> international systems, including the policies of upholding the justified expectations
> of parties and of minimizing the adverse consequences that might follow from
> subjecting a party to the law of more than one state.[68]

However, as both parties have recognized, Louisiana Civil Code article 3537 provides a more

specific choice of law provision when the issue involves conventional obligations and contracts:

> Except as otherwise provided in this Title, an issue of conventional obligations is
> governed by the law of the state whose policies would be most seriously impaired
> if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant
> policies of the involved states in the light of: (1) the pertinent contacts of each state
> to the parties and the transaction, including the place of negotiation, formation, and
> performance of the contract, the location of the object of the contract, and the place
> of domicile, habitual residence, or business of the parties; (2) the nature, type, and

---

[65] *Klaxon Co. v. Stenor Elec. Mfg Co.*, 313 U.S. 487 (1941); *Cain v. Altec Indus.*, 236 F. App'x 965, 967 (5th Cir. 2007).

[66] *Abraham v. State Farm Mut. Auto. Ins.*, 465 F.3d 609, 611 (5th Cir. 2006).

[67] *Cain v. Altec Indus.*, 236 F. App'x 965, 967 (5th Cir. 2007).

[68] La. Civ. Code art. 3515.

purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[69]

As it is undisputed that the relationship between Plaintiffs and Fidelity, and Fidelity's alleged duties owed to Plaintiffs, arise out of the Escrow Agreement, it appears that Article 3537 applies to the choice of law analysis. However, even more specifically, and as will be relevant in this matter, Louisiana Civil Code article 3540 instructs that the law relied upon by the parties in the formation of a contract, unless contrary to public policy, should apply:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.[70]

Finally, Plaintiffs raised the issue of dépeçage, but fail to provide any argument as to its applicability in this matter, nor do they make any case that different states' laws should apply to its separate claims against Fidelity.[71] Moreover, 1991 Revision Comment (d) to Louisiana Civil Code article 3515 specifically discuss the issue of dépeçage, and demonstrate a clear preference within Louisiana law to avoid the practice if possible:

> (d) Issue-by-issue analysis and dépeçage. The use of the term "issue" in the first paragraph of this Article is intended to focus the choice-of-law-process on the particular issue as to which there exists an actual conflict of laws. When a conflict exists with regard to only one issue, the court should focus on the factual contacts and policies that are pertinent to that issue. When a conflict exists with regard to more than one issue, each issue should be analyzed separately, since each may implicate different states, or may bring into play different policies of these states. Seen from another angle, each state having factual contacts with a given multi-state

---

[69] La. Civ. Code art. 3537.

[70] La. Civ. Code art. 3540.

[71] *See* Rec. Doc. 13 at pp. 10-12.

case may not have an equally strong interest in regulating all issues in the case, but only those issues that actually implicate its policies in a significant way.

This so-called issue-by-issue analysis is an integral feature of all modern American choice-of-law methodologies and facilitates a more nuanced and individualized resolution of conflicts problems. One result of this analysis might be that the laws of different states may be applied to different issues in the same dispute. This phenomenon is known in conflicts literature by its French name of dépeçage. Although infrequently referred to by this name, this phenomenon is now a common occurrence in the United States and has received official recognition in Europe. ***This Article does not prohibit dépeçage. However, dépeçage should not be pursued for its own sake. The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.***[72]

This Court notes that "[w]hile statements contained in the official comments are not part of the statute and are not binding on courts, they are not discounted entirely, and [the Louisiana Supreme Court] find[s] that they provide some aid in interpreting legislative intent.[73] In light of this instruction, and because Plaintiffs articulate no argument as to why this Court should engage in dépeçage regarding its claims against Fidelity, the Court declines to do so here. Therefore, the Court finds that Louisiana Civil Code article 3537, which governs the choice of law analysis for conventional obligations, and Louisiana Civil Code article 3540, to the extent that the Escrow Agreement demonstrates state law which was "clearly chosen or relied upon by the parties," controls the choice of law analysis for Plaintiffs' claims against Fidelity here.

---

[72] 1991 Revision Comment (d) to La. Civ. Code art. 3515 (emphasis added).

[73] *Broussard v. Hilcorp Energy Co.*, 2009-C-0449 (La. 10/20/09); 24 So. 3d 813, 816 n. 5.

### 2. Choice of Law Analysis

Louisiana Civil Code article 3537 instructs that an issue is governed by the law of the state whose policies would most seriously be impaired if its laws were not applied to that issue.[74] Article 3537 provides express guidance on what a court is to consider in this determination:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[75]

Concerning the first factor, Fidelity is domiciled in California, the Escrow Agreement was drafted in California, and Fidelity's performance of the contract occurred in California.[76] In contrast, Plaintiffs emphasize that Plaintiffs Patel and Kajal are domiciled in Louisiana, and as a result the alleged loss was "incurred by a Louisiana resident and Louisiana corporation."[77] Plaintiffs allege no other contacts that Louisiana has to this dispute, nor do they provide any additional argument as to why Louisiana's interests would be substantially harmed if its law were not applied to this dispute.[78] Plaintiffs merely make the general statement that Fidelity "conducts business throughout the country and such status implies instances where the company may be subject to other state law."[79] The Louisiana Supreme Court has previously held that a particular state's law should apply under an

---

[74] La. Civ. Code. art. 3537.

[75] *Id.*

[76] Rec. Doc. 29-1 at p. 8.

[77] Rec. Doc. 13 at p. 12.

[78] *See id.*

[79] *Id.*

16

Article 3537 analysis where one party was a resident of that state, and the negotiation and formation of the contract occurred in that state, even where the other party was a resident of Louisiana and the incident giving rise to the suit occurred in Louisiana.[80] Fidelity and Plaintiffs have connections to California and Louisiana, respectively, but because the Escrow Agreement was drafted and performed in California, this factor weighs in favor of applying California's law.

Neither party has made arguments relevant to Article 3537's second factor, regarding the nature, type, and purpose of the contract. However, Louisiana courts have recognized that this factor weighs in favor of applying another state's law when the contract was formed in that foreign state and the issue concerns an area which Congress "has allowed fifty states to have their own uniform system of regulations governing" that area.[81] Again, here, the Escrow Agreement was formed in California. As will be explained in greater detail below, California law has a uniform system of regulations governing escrow holders' obligations.[82] Therefore, and considering that Plaintiffs articulate no competing interest of Louisiana to support applying its law, the Court finds that this factor also weighs in favor of applying California law.

Third, Article 3537 requires courts to consider "the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other." Again, Article 3515 dictates that a court should determine the strength and pertinence of states' policies in light of:

---

[80] *See Champagne v. Ward*, 2003-3211 (La. 1/19/05); 893 So. 2d 773

[81] *Murden v. Acands*, 2005-0319 (La. App. 4 Cir. 12/14/05); 921 So. 2d 165, 171.

[82] *See infra* Part IV.B.1.

(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

The Louisiana Supreme Court has recognized that states have a substantial interest in the application of its laws to contracts formed within their state.[83] Again, as will be explained in greater detail below, California law severely limits the duties and obligations of escrow holders like Fidelity.[84] Therefore, not applying the law of California could substantially harm California's policy decision to limit its escrow holders' liability.[85] Accordingly, this Court finds that under Article 3537, California's policies would be most seriously impaired if its laws were not applied to this dispute.

While an application and analysis of Article 3537 independently supports the application of California law to Plaintiffs' claims against Fidelity, additionally, this Court is further persuaded that the application of California law to Plaintiffs' claims against Fidelity is appropriate after considering Article 3540, which instructs that the law of the state chosen by the parties, "or clearly relied upon," governs an issue.[86] As Fidelity has noted, the Escrow Agreement references California law in its first section regarding general provisions and the deposit of funds.[87] While the Escrow Agreement does not contain a choice of law clause, this Court finds that the inclusion and the reference to application of a California statute, in the absence of any other express reference to another state's law, supports

---

[83] *Id.*

[84] *See infra* Part IV.B.1.

[85] *See Champagne*, 893 So. 2d at 789 (applying Mississippi law after recognizing that Mississippi had the more substantial interest in applying its laws because the issue in the case would concern the regulation of its industries and the contractual obligations that arose under a contract formed in Mississippi).

[86] La. Civ. Code art. 3540.

[87] Escrow Agreement, Rec. Doc. 29-2 at p. 2, § 1 (referencing the application of Cal. Ins. Code § 1243.5).

a finding that the parties relied upon California law to govern the Escrow Agreement. The Court again notes that Plaintiffs have not come forward to allege any connection Louisiana has to this dispute or interest that would be substantially harmed by failing to apply its laws except that Plaintiffs reside in Louisiana.[88] Therefore, for all the reasons cited above, the Court finds that the application of California's law is appropriate regarding Plaintiffs' claims against Fidelity.

**B. Whether Plaintiffs Have Stated a Claim Upon Which Relief Can Be Granted**

### 1. Breach of Fiduciary Duty

Generally, under California law, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages."[89] An escrow holder is the agent and fiduciary of the parties to the escrow.[90] However, the California Supreme Court has stated that "[t]he agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow."[91] While an escrow holder has a fiduciary duty to comply with the instructions of the parties "[o]n the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.'"[92]

---

[88] *See* Rec. Doc. 13 at p. 12.

[89] *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (Cal. 2011).

[90] *Summit Fin. Holdings*, 41 P.3d at 551.

[91] *Id.*

[92] *Id.* at 552 (citing *Claussen v First Am. Title Guaranty Co.*, 186 Cal. App. 3d 429, 435-36 (Cal Ct. App. 6th Dist. 1986) (alterations in original).

In fact, [a]bsent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions."[93]

Here, in the pleadings, Plaintiffs make no allegation that Fidelity failed to comply with the instructions of any of the parties to the escrow, nor that Fidelity engaged in, or was aware of, any fraud.[94] Instead, Plaintiffs claim that Fidelity is liable because it was "the repository for the escrow fund," and now claim that the funds were disbursed to an unknown party pretending to be the intended recipient.[95] However, as the California Supreme Court precedent cited above instructs, under California law, an escrow holder is only responsible to carry out the instructions of the parties to the escrow agreement.[96] In fact, a California intermediate appellate court has expressly rejected the proposition that an "escrow holder is under a fiduciary duty to go beyond the escrow instructions and [] notify each party to the escrow of any suspicious fact or circumstance which has come to his attention before or during the life of the escrow which could conceivably affect such party even though the fact or circumstance is not related to his specific escrow instructions."[97] While a federal court sitting in diversity, such as this Court, must apply "state law as announced by the highest court of the State,"[98] "[a] federal court sitting in diversity is bound to follow decisions of the state's

---

[93] *Id.*

[94] *See* Amended Complaint, Rec. Doc. 26; *see also Summit Fin. Holdings*, 41 P.3d at 552 (noting that there was no evidence that an escrow holder "was aware of any collusion or fraud in the disbursement that would have adversely affected any party to the escrow").

[95] *See* Rec. Doc. 26 at p. 5; *see also* Rec. Doc. 13 at p. 4.

[96] *Summit Fin. Holdings*, 41 P.3d at 551-52.

[97] *Lee*, 264 Cal. App. 2d at 162-64.

[98] *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 463 (1967)

intermediate appellate courts unless it is 'convinced by other persuasive data that the highest court of the state would decide otherwise.'"[99]

Aside from the limited duties imposed on escrow holders under California law, the terms of the Escrow Agreement further indicate that Fidelity did not breach its fiduciary duty for allegedly disbursing the funds to an improper party without actually violating any instruction of a party to the escrow. The Escrow Agreement expressly states that "Escrow Holder [Fidelity] is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, ***nor as to the identity***, authority or rights of any person executing same."[100] Therefore, Plaintiffs cause of action for breach of fiduciary duty against Fidelity fails as a matter of law, because Plaintiffs have not claimed that Fidelity failed to follow the instructions of any party to the escrow holder or that Fidelity participated in, or knew of, any fraud in the disbursement of the escrow funds.

### 2. Failure to Perform Due Diligence

It is unclear from Plaintiffs' pleadings if this cause of action is separate and distinct from Plaintiffs' claim for breach of fiduciary duty. However, in opposition to the pending motion, Plaintiffs discuss them together as one cause of action under the heading "Breach of fiduciary duty/failure to perform due diligence."[101] Moreover, California courts have recognized that in the context of an escrow relationship "[b]reach of fiduciary duty and negligence are different terms for

---

[99] *Exxon Co., U.S.A., a Div. of Exxon Corp. v. Banque de Paris Et Des Pays-Bas*, 889 F.2d 674, 677 (5th Cir. 1989) (quoting *West v. AT & T*, 311 U.S. 223, 237 (1940)).

[100] Escrow Agreement, Rec. Doc. 29-2 at p. 4, § 23 (Clarification of Duties section) (emphasis added).

[101] Rec. Doc. 13 at p. 12.

the same cause of action."[102] A claim for failure to perform due diligence is a negligence claim.[103] Therefore, considering the limited duties of an escrow holder and for the reasons stated above,[104] the Court also dismisses any claim against Fidelity for "failure to perform due diligence."

### 3. Detrimental Reliance/Promissory Estoppel

Under California law, detrimental reliance, or promissory estoppel as it is normally referred to, requires (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.[105] Fidelity argues that this cause of action should be dismissed for two distinct reasons. First, Fidelity cites *Oakview Terrace v. Owens Financial Group*,[106] from the Northern District of California, to argue that Plaintiffs' claim fails as a matter of law because even if Fidelity did make a promise or statement to Plaintiffs, it would not be reasonable for Plaintiffs to rely on any statement it made that exceeded the narrow duties of escrow holders.[107] However, this argument is not supported by *Oakview*, which would nonetheless not be binding on this Court.

In *Oakview*, the escrow holder, Old Republic, was accused by the plaintiff, Oakview, of failing to disclose certain information:

---

[102]  *Zang v. Nw. Title Co.*, 185 Cal. Rptr. 176, 182 (Cal. Ct. App.1st Dist. 1982).

[103]  *See generally, Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992).

[104]  *See supra* Part IV.B.1.

[105]  *US Ecology, Inc. v. State*, 129 Cal.App. 4th 887, 905 (Cal. Ct. App. 4th Dist 2005) (citing *Kajima/Ray Wilson v. Los Angeles Cnty Metropolitan Transp. Auth.*, 1 P.3d 63 (Cal. 2000)); *see also Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 446 F.Supp. 2d 1109, 1108 (N.D. Cal. 2006).

[106]  No. C-93-2446-MHP, 1994 WL 173928 (N.D. Cal. Apr. 19, 1994).

[107]  Rec. Doc. 29-1 at p. 18.

It is important to note at the outset that Oakview does not allege that it received any affirmative representations from Old Republic. Old Republic's allegedly tortious conduct is a failure to disclose to Oakview's limited partners the conduct of Oakview's general partner, JMH. Because Oakview's claims are based on a failure to disclose, its three fraud-based claims, as well as its claims for breach of fiduciary duty and negligence, require a duty on the part of Old Republic to supply the information allegedly withheld.[108]

The *Oakview* court relied on the same principles of California law regarding an escrow holder's narrow duties that this Court outlined above to hold that Old Republic did not have a duty to disclose.[109]

Unlike the escrow holder in *Oakview*, here, Plaintiffs have alleged that an employee of Fidelity, Priestley, made an affirmative representation that the Conditional Letter of Guarantee that was allegedly sent by Ron My was "in fact, an official letter from Wells Fargo and was signed by him [Ron My] personally."[110] As such, this matter is distinguishable from *Oakview*, and Fidelity, for the purposes of the pending motion, may not simply rely on an escrow holder's limited duties under California law. No element for a cause of action of promissory estoppel or detrimental reliance requires the existence of a duty.[111] Plaintiffs have alleged that Fidelity (1) made a promise; (2) that they relied on that promise; (3) that their reliance was reasonable; and (4) that they were injured by this reliance because they allowed for the disbursement of the escrow funds to an unintended party, believing the letter of guarantee to actually be from Ron My of Wells Fargo. The existence of the

---

[108]  1994 WL 173928, at *2.

[109]  *Id.* at *3-*4.

[110]  Rec. Doc. 13 at p. 3.

[111]  *See US Ecology Inc.*, 129 Cal. App.4th at 905.

23

elements of promissory estoppel is a question of fact.[112] Upon a motion to dismiss, this Court must accept all the factual allegations in the pleadings as true.[113] Therefore, Plaintiffs have stated a claim that satisfies all the elements of detrimental reliance or promissory estoppel under California law.

Fidelity's second proposed reason as to why this cause of action should be dismissed is because it is barred considering Plaintiffs and Fidelity were parties to a contract. Fidelity contends that because there was a contract between the parties, the Escrow Agreement, a cause of action for detrimental reliance or promissory estoppel is foreclosed.[114] Fidelity states that "detrimental reliance claims are equitable in nature and are generally applicable only when the plaintiff does not have a breach of contract claim."[115] In support of this argument, Fidelity cites *Money Store Investment Corp. v. Southern California Bank*.[116]

In *Money Store Investment Corp.*, the plaintiff brought causes of action against the defendant-escrow holder for breach of contract, claiming that the defendant failed to follow the escrow instructions, and promissory estoppel, alleging that it would not have closed the loan had it known the defendant would not follow the terms of the escrow agreement.[117] The district court granted the defendant's motion for summary judgment and dismissed the claims.[118] On appeal, the intermediate appellate court reversed the district court's dismissal of the breach of contract claim,

---

[112] *Div. Of Labor Law Enforcement v. Transpacific Transp. Co.*, 137 Cal. Rptr. 855, 860 (Cal. Ct. App. 1st Dist. 1977).

[113] *Doe*, 528 F.3d at 418 (citing *Twombly*, 550 U.S. at 544).

[114] Rec. Doc. 29-1 at p. 19.

[115] *Id.*

[116] 120 Cal. Rptr. 2d 58 (Cal. Ct. App. 4th Dist. 2002).

[117] *Id.* at 61.

[118] *Id.*

finding that their was a triable issue of fact.[119] However, with regard to the promissory estoppel claim, the court noted that "promissory estoppel provides a substitute for consideration to allow enforcement of a promise."[120] Because the plaintiff still had the breach of contract claim, the court held that "[a] cause of action for promissory estoppel would be superfluous," and instructed the trial court to grant the defendant's motion on this cause of action and dismiss.[121]

   In contrast to the plaintiff in *Money Store Investment Corp.*, here, Plaintiffs have not brought a cause of action for breach of contract against Fidelity. As this Court has detailed above, Plaintiffs' pleadings do not allege that Fidelity violated any provision of the Escrow Agreement. Furthermore, as this Court has dismissed Plaintiffs' other claims against Fidelity, there is nothing left to which Plaintiffs' claim of promissory estoppel could be "superfluous." The nature of Plaintiffs' claims against Fidelity is that an employee of Fidelity made an affirmative assertion to Plaintiffs that was incorrect and caused them injury. These allegations do not concern the duties and obligations imposed pursuant to the Escrow Agreement, which is why Plaintiffs have not brought, and do not allege, a breach of contract claim against Fidelity. Plaintiffs' cause of action for promissory estoppel or detrimental reliance is not foreclosed simply by the existence of the Escrow Agreement. Therefore, the Court finds that Plaintiffs have stated a claim upon which relief can be granted for detrimental reliance or promissory estoppel against Fidelity, and will deny the pending motion in this regard.

---

[119] *Id.* at 64

[120] *Id.* at 65.

[121] *Id.*

## V. Conclusion

For the reasons stated above, the Court finds that the law of California governs Plaintiffs' claims against Fidelity. Under California law, Plaintiffs have failed to state a claim upon which relief can be granted for breach or fiduciary duty and failure to perform due diligence, and these claims fail as a matter of law. However, accepting all Plaintiffs' factual allegations as true, Plaintiffs have stated a claim upon which relief can be granted for detrimental reliance or promissory estoppel. Accordingly,

**IT IS HEREBY ORDERED** that Fidelity's "Motion to Dismiss Pursuant to Federal Rule 12(b)(6)"[122] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Fidelity for breach of fiduciary duty and failure to perform due diligence are **DISMISSED WITH PREJUDICE**;

**NEW ORLEANS, LOUISIANA**, this 19th day of July, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[122] Rec. Doc. 29.

26