## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PREMIUM HOSPITALITY, L.L.C., et al.**              **CIVIL ACTION**

**VERSUS**                                            **NO. 12-0779**

**ASTRA CAPITAL FUNDING, et al.**                     **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendant Fidelity National Title Company's ("Fidelity") "Motion to Alter or Amend Judgment Denying, in Part, Fidelity National Title Company's Motion to Dismiss Pursuant to Federal Rule 12(b)(6),"[1] wherein Fidelity "requests that this Court . . . alter or amend" its earlier Order denying Fidelity's 12(b)(6) motion and instead, "dismiss Plaintiffs' detrimental reliance claim against Fidelity with prejudice."[2] After considering the complaint, the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A. Factual Background

Plaintiffs are Premium Hospitality, L.L.C. ('Premium Hospitality"), Kajal, Incorporated ("Kajal"), and Ashok Patel ("Patel") (collectively, "Plaintiffs").[3] Defendants are Astra Capital Funding, Inc. ("Astra"), John Burton Ramsey ("Ramsey"), Sandeep Nagin Patel ("Sandeep Patel"), BP Communications LTD ("BP"), World Trade Holdings, LLC ("World Trade"), and Fidelity.[4]

---

[1] Rec. Doc. 63.

[2] Rec. Doc. 63 at 2.

[3] Rec. Doc. 26 at ¶ 3 (Amended Complaint).

[4] *Id.* at ¶ 4.

Patel acted as President of both Premium Hospitality and Kajal, which are both engaged in the hotel industry. In that capacity, Patel sought loans to finance specific projects concerning each corporation.[5] Patel contacted Mortgage Corp, whose agent was Defendant Sandeep Patel, who in turn referred him to Astra. Plaintiffs claim that they reached an agreement with Astra, whereby Premium Hospitality would receive a $1,150,000.00 loan and Kajal would receive a $1,680,00.00 loan.[6] According to Plaintiffs, two letters of commitment, dated November 17, 2011, were drafted and signed by both parties, and a $200,000 escrow deposit for each loan was requested as a down payment.[7] Fidelity was designated to hold the escrow deposit funds.[8] On December 2, 2011, the escrow funds were wired to Fidelity, and the loans were scheduled to close on February 24, 2012.[9] However, according to Plaintiffs on December 6, 2011, Fidelity received a "Conditional Letter of Guarantee" purportedly from Ron My of Wells Fargo Bank, N.A., and the funds were released from the escrow account. Plaintiffs claim a $300,000 wire transfer was sent to BP and a $100,000 payment was sent to World Trade.[10] Ramsey signed the wire transfer. Plaintiffs claim that "[t]hese funds then subsequently disappeared."[11]

Plaintiffs claim that "violations of law have occurred in this matter, and comprise fraud, breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, breach

---

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 6.

[7] *Id.*

[8] *Id.* at ¶ 7.

[9] *Id.*

[10] *Id.* at ¶ 8.

[11] *Id.*

of fiduciary duty, detrimental reliance, and failure to perform due diligence. Plaintiffs bring causes of action under the Louisiana Credit Agreement Statute,[12] and Louisiana Civil Code articles 1983, 1759, and 1967.[13] Specifically, with regard to Fidelity, Plaintiff claims that it is "liable to Plaintiffs herein for breach of fiduciary duty, detrimental reliance, and failure to perform due diligence. [It was] the repository for the escrow fund and allegedly conducted due diligence prior to the transfer of the escrow account by assuring plaintiffs of the integrity of the escrow transfer."[14]

## B. Procedural Background

Plaintiffs filed the original complaint in this matter on March 23, 2012, invoking this Court's diversity jurisdiction.[15] On August 9, 2012, Fidelity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[16] Plaintiffs filed an opposition on September 4, 2012.[17] On March 6, 2013, this Court discovered certain pleading deficiencies that created some doubt as to whether this Court had subject matter jurisdiction. In response, the Court ordered Plaintiffs to file an amended complaint to properly allege the citizenship of all parties, and denied Defendants first motion to dismiss without prejudice, with leave to refile the motion after such time as the Court determined it had subject matter jurisdiction.[18]

---

[12] La. R.S. § 6:1122.

[13] Rec. Doc. 26 at ¶ 9.

[14] *Id.* at ¶ 12.

[15] Rec. Doc. 1. In the original complaint, Plaintiffs mistakenly claimed that jurisdiction "is proper under the diversity provision of 28 U.S.C. § 1345." *See id.* at ¶ 2. Plaintiffs correct this mistake in the amended complaint. *See* Rec. Doc. 26 at ¶ 2.

[16] Rec. Doc. 9.

[17] Rec. Doc. 13.

[18] Rec. Doc. 22.

On March 13, 2013, Plaintiffs filed an amended complaint.[19] Further, on March 28, 2013, Fidelity filed a memorandum in support of subject matter jurisdiction, alleging the citizenship of all parties and demonstrating complete diversity.[20] On that same day, Fidelity refiled their motion to dismiss.[21] Plaintiffs did not refile an opposition to this motion to dismiss, and the Court construed their opposition to Fidelity's first motion to dismiss as the opposition to the second motion to dismiss.[22] After reviewing the filings, complaint, and applicable law, the Court denied Fidelity's second motion to dismiss because "the existence of the elements of promissory estoppel is a question of fact."[23] Fidelity now asks the Court to revisit that conclusion in the present motion.

## II. Parties' Arguments

### A. Fidelity's Arguments in Support of Dismissal of Plaintiffs' Claims Against It

In support of the pending motion, Fidelity points out that "this Court recognized that Fidelity expressly notified Plaintiffs that it would not be held 'accountable or liable for the sufficiency or correctness as to form, manner or execution, or *validity of any instrument* deposited in this escrow, *nor as to the identity*, authority or rights of any person executing the same.'"[24] Fidelity continues, "Despite that express limitation on Fidelity's obligations, Plaintiffs allege that they detrimentally

---

[19] Rec. Doc. 26.

[20] Rec. Doc. 27.

[21] Rec. Doc. 29.

[22] Rec. Doc. 46 at 4.

[23] *Id.* at 24.

[24] Rec. Doc. 63-1 at 1 (quoting Order [Rec. Doc. 46] at 21) (emphasis added).

relied on Fidelity's representations regarding the validity of one of the escrow documents purportedly sent from Wells Fargo."[25]

According to Wells Fargo, "[u]nder California law . . . whether a party reasonably relied on the representations of another can be determined as a matter of law."[26] For this proposition, Fidelity cites to *Hu v. City & County of San Francisco*,[27] *Barken v. CBIZ Special Risk Ins. Servs., Inc.*,[28] and *Guido v. Koopman*.[29] Fidelity concludes that, because it "expressly disclaimed that it was not accountable for the correctness of the escrow documents or the identity of any parties executing those documents, Plaintiffs were unreasonable, *as a matter of law*, in relying on any representation by Fidelity regarding the validity of the escrow documents or of anyone's identity in the loan transaction at issue."[30] As such, Fidelity requests that this Court "grant Fidelity's motion to alter or amend" its prior Order and "dismiss Plaintiffs' detrimental reliance claim against Fidelity with prejudice."[31]

Elaborating on its argument, Fidelity argues that "[t]he Court committed  manifest error in failing to dismiss Plaintiffs' detrimental reliance claim" because "[i]n the memorandum supporting its motion to dismiss, Fidelity asserts that even if Plaintiffs had relied on a representation by Fidelity

---

[25] *Id.*

[26] *Id.* at 2.

[27] No. 035601, 2013 WL 2948035 (Cal. Ct. App. June 17, 2013).

[28] No. 136118, 2005 WL 1385325 (Cal. Ct. App. June 13, 2005).

[29] 2 Cal. Rptr. 2d 437 (Cal. Ct. App. 1992).

[30] Rec. Doc. 63-1 at 2.

[31] *Id.*

. . . Plaintiffs were not reasonable or justified in so relying, **as a matter of law**, given the express terms of the Escrow Agreement, citing *Oakview Terrace v. Owens Financial Group, Inc* . . . ."[32] Fidelity continues by claiming that "this Court did not consider whether Plaintiffs were unreasonable, as a matter of law, in relying on any representations by Fidelity regarding the validity of escrow documents and/or the identity of the parties to those documents, despite any alleged affirmative statement."[33]

For Fidelity, "*Hu, Guido*, and *Barken* [make] any alleged reliance by Plaintiffs' on statements made by Fidelity . . . unreasonable as a matter of law" because those cases show that "affirmative representations versus failures to disclose" is not a "determinative factor," as Fidelity believes this Court held in its prior Order.[34] As in those cases, any affirmative representations here were unreasonable because "[t]he Escrow Agreement . . . specifically informed Patel that Fidelity is not accountable or liable for the sufficiency or correctness of any of the instruments deposited in escrow or the identity of any parties . . . Given this express language . . . Plaintiffs were unreasonable in relying on Fidelity to confirm the sufficiency, correctness, or validity or any document or the rights of any person to execute such documents."[35]

Finally, Fidelity argues in passing that "a dismissal of Plaintiffs' detrimental reliance claim would be consistent with this Court's Order dismissing Plaintiff's other claims."[36] Fidelity contends that because the Court has already held that Fidelity has no duty to confirm the validity of escrow

---

[32] *Id.* at 6.

[33] *Id.*

[34] *Id.* at 9–10.

[35] *Id.* at 9.

[36] *Id.* at 10.

documents or the identity of the individuals, "[i]t does not logically follow that when Plaintiffs knew that Fidelity had no such duties, Plaintiffs could nevertheless rely on Fidelity to confirm the validity of the documents or the identity of the person executing the document."[37]

### B. Plaintiffs' Arguments in Opposition

In opposition, Plaintiffs provide detail about their allegations against Fidelity.[38] Plaintiffs claim that the following day after Patel and Ramsey signed the Escrow Agreement and specified that Wells Fargo Bank would guarantee the funds, on December 2, 2011, Fidelity received an incoming wire transfer in the amount of $400,000 that was credited to Patel's escrow account.[39] Thereafter, in an email dated December 6, 2011, Natalie Priestley ("Priestley"), a Vice President and Senior Commercial Escrow Officer with Fidelity, informed Patel and Ramsey that she received the Conditional Letter of Guarantee from Ron My of Wells Fargo.[40] The next day, Priestley again contacted Patel and Ramsey and stated:

> I spoke with Ron My this morning and confirmed that the Conditional Letter of Guarantee that I received yesterday is, in fact, an official letter from Wells Fargo and was signed by him personally.[41]

Plaintiffs claim that "[w]ith the assurance that his interests were protected by this verification, Ashok Patel signed an Astra Capital Funding Fund Control Agreement authorizing Fidelity National Title Company to release the funds held in escrow to the 'Private Equity Partners

---

[37] *Id.* at 10.

[38] Rec. Doc. 65 at 1–4.

[39] *Id.* at 2.

[40] *Id.* at 2–3.

[41] *Id.* at 3 (citing Rec. Doc. 13-2).

of ASTRA.'"[42] That same day, according to Plaintiffs, Ramsey contacted Fidelity and secured the transfer of the escrow funds. Plaintiffs claim that Patel was unable to contact Ramsey during this time "and it became obvious that the loans would not be forthcoming, and more importantly that [Patel's] funds had disappeared."[43]

Patel subsequently contacted Wells Fargo about the Conditional Letter of Guarantee and hired an investigator. Plaintiffs claim that they discovered that Ron My, who allegedly sent the letter to Fidelity, is a real person and employee of Wells Fargo, but he had not actually sent the Conditional Letter of Guarantee.[44] Plaintiffs allege that the "document was bogus, and the perpetrators had simply put a prearranged telephone number on the document, complete with pre-planned responses to pose as both a Wells Fargo office and Ron My."[45] "With this false telephone number in place, John B. Ramsey merely contacted Natalie Priestly and requested that she verify the Conditional Letter of Guarantee by utilizing the same telephone number."[46]

Addressing their claim for detrimental reliance against Fidelity, Plaintiffs claim that under California law, a plaintiff must prove: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance both reasonable and foreseeable; and (4) injury due to the reliance.[47] Plaintiffs then quote the Court's Order and Reasons,[48] stated that

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 3.

[46] *Id.* at 3.

[47] *Id.* at 6 (citing *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012)).

[48] Rec. Doc. 46.

"Plaintiffs have alleged that Fidelity (1) made a promise; (2) that they relied on that promise; (3) that their reliance was reasonable; and (4) that they were injured by this reliance because they allowed for the disbursement of the escrow funds to an unintended party, believing the letter of guarantee to actually be from Ron My of Wells Fargo."[49] Plaintiffs also quote the Court's statement in its Order that "[t]he existence of the elements of promissory estoppel is a question of fact," as well as *Division of Labor Law Enforcement v. Transpacific Transportation Co.*[50] that "[t]he existence of the elements of promissory estoppel constitute a question of fact as does the existence of an implied in fact contract."[51]

Plaintiffs argue that Defendants are mistaken in their argument that "it was unreasonable for Ashok Patel to rely on the alleged promise" because "many promissory estoppel actions are based upon a [sic] oral statement."[52] Plaintiffs continue that here, "the alleged promise is expressed in written form as an e-mail," which "permits a Court [sic] to better evaluate whether relying on the promise was reasonable."[53]

Finally, Plaintiffs quote at length from the Court's prior Order in which the Court addresses the Escrow Agreement by pointing out that "[n]o element for a cause of action of promissory estoppel or detrimental reliance requires the existence of a duty," and also quotes a California Supreme Court case, *Western Lithograph Co. v. Vanomar Producers*,[54] that "a promise of extra

---

[49]   Rec. Doc. 65 at 6–7 (quoting Rec. Doc 46 at 23).

[50]   137 Cal. Rptr. 855 (Cal. Ct. App. 1977).

[51]   Rec. Doc. 65 at 7 (quoting Rec. Doc. 46 at 23–24 and 137 Cal. Rptr. 855, 860).

[52]   *Id.*

[53]   *Id.*

[54]   197 P. 103 (Cal. 1921)

compensation of a contract to a promisee who has at the time a pre-existing legal duty to perform the contract is without consideration."[55]

### III. Standard on a Motion to Reconsider

A Rule 59(e) motion to alter or amend a final judgment "calls into question the correctness of a judgment,"[56] and courts have considerable discretion in deciding whether to grant such a motion.[57] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[58] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1)   the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)   the movant presents newly discovered or previously unavailable evidence;

(3)   the motion is necessary in order to prevent manifest injustice; or

(4)   the motion is justified by an intervening change in controlling law.[59]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[60] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[61] "It is well

---

[55]   *Id.* (quoting Rec. Doc. 46 at 23; incorrect citation given for second quotation).

[56]   *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[57]   *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[58]   *Id.* at 355-56.

[59]   *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (citations omitted).

[60]   *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[61]   *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[62] Furthermore, a court "will not consider an issue raised for the first time in a Motion for Reconsideration."[63] Such arguments are deemed to be waived.[64]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[65] and the motion must "clearly establish" that reconsideration is warranted.[66] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[67]

## IV. Law and Analysis

### A. Plaintiffs' Asserted Grounds for Reconsideration

In this case, Fidelity contends that reconsideration is warranted on the basis of one alleged manifest legal error: (1) that the Court erred in denying Fidelity's motion to dismiss with respect to Plaintiffs' detrimental reliance claim because "the existence of the elements of promissory estoppel

---

[62] *Helena Labs Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[63] *Lincoln General Ins. Co. v. De La Luz Garcia*, 501 F.3d 436, 442 (5th Cir. 2007) (quoting *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999)).

[64] *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) (cited with approval in *Lincoln General Ins.*, 501 F.3d at 442)).

[65] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (citation omitted).

[66] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[67] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002); *see also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

is a question of fact."[68] To the contrary, Fidelity contends that "[u]nder California law . . . whether a party reasonably relied on the representations of another can be determined as a matter of law."[69] As stated above, a manifest error of fact or law would be grounds for reconsideration pursuant to Rule 59(e). Therefore, this Court now addresses Fidelity's contention.

Under California law, detrimental reliance, or promissory estoppel as it is normally referred to, requires (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance both reasonable and foreseeable; and (4) injury resulting from the reliance.[70] Fidelity argues that this Court should reconsider its denial of Fidelity's 12(b)(6) motion for dismissal because, as a matter of law, Plaintiffs' reliance on Fidelity's alleged promise was not reasonable. Fidelity cites *Hu v. City & County of San Francisco*,[71] *Barken v. CBIZ Special Risk Ins. Servs., Inc.*,[72] and *Guido v. Koopman*.[73] Based on these cases, Fidelity argues that Plaintiffs' promissory estoppel claim fails as a matter of law because even if Fidelity did make a promise or statement, it was unreasonable for Plaintiffs to rely on any statement made by Fidelity in light of the express disclaimer to liability in the Escrow Agreement.[74] However, this argument is not supported by *Hu*, *Barken*, or *Guido*, the first two which, in any event, would not be noticeable by this Court

---

[68] Rec. Doc. 46 at 21.

[69] Rec. Doc. 63 at 2.

[70] *US Ecology, Inc. v. State*, 129 Cal.App. 4th 887, 905 (Cal. Ct. App. 4th Dist 2005) (citing *Kajima/Ray Wilson v. Los Angeles Cnty Metropolitan Transp. Auth.*, 1 P.3d 63 (Cal. 2000)); *see also Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 446 F.Supp. 2d 1109, 1108 (N.D. Cal. 2006).

[71] No. 035601, 2013 WL 2948035 (Cal. Ct. App. June 17, 2013).

[72] No. 136118, 2005 WL 1385325 (Cal. Ct. App. June 13, 2005).

[73] 2 Cal. Rptr. 2d 437 (Cal. Ct. App. 1992).

[74] Rec. Doc. 63 at 2.

as unpublished/noncitable cases.[75]

In *Hu*, the issue was "whether San Francisco's payroll expense tax, which is assessed on all compensation paid by a business to individuals performing services for the business within the city, applies to the sole shareholder and principal employee of a professional corporation."[76] As a part of its argument against the payroll expense tax, the plaintiff corporation maintained that the city of San Francisco was estopped from assessing penalties for late payment because the corporation had relied on the city's statement in brochures that the payroll tax did not apply to shareholders and principals.[77] In *dictum*, the court held that the corporation's "reliance on this interpretation was not reasonable, as a matter of law, inasmuch as the brochures themselves indicated that '[f]or a more precise understanding of these ordinances, reference should be made to the ordinances themselves.'"[78]

This case, which neither involves taxes nor alleged misrepresentations of the law, is clearly distinguishable insofar as it concerns promises between private parties and alleged misrepresentations of fact. Aside from mentioning in *dictum* that the plaintiff's reliance was unreasonable as a matter of law, the court in *Hu* did not elaborate on that issue. Thus, the case, besides being unpublished and distinguishable, is not suitable for showing why this Court misapprehended the standard for reasonable reliance as a matter of law, as Fidelity maintains.

---

[75] *See* Cal. R. of Court 8.1115(a) ("Except as provided in (b) [which provides exceptions for law of the case, res judicata, and collateral estoppel], an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published *must not be cited or relied on by a court or a party in any other action*.") (emphasis added).

[76] No. 035601, 2013 WL 2948035, at *1 (Cal. Ct. App. June 17, 2013).

[77] *Id.* at *6

[78] *Id.*

*Barken*, like *Hu*, is an unpublished/noncitable decision unsuitable for this Court's consideration. Nevertheless, *Barken is* still, like *Hu*, inapposite. *Barken* differed from the case at hand in that the plaintiff claimed to have relied on alleged representations by the defendant corporation even after having conducting his own independent investigation into the defendant corporation, which the plaintiff had targeted for a merger.[79] The plaintiff's independent research included reviewing the defendant corporation's annual reports and filings with the Securities and Exchange Commission, following the corporation's stock, and discussing stock analyst reports about the corporation with independent stock brokers.[80] The annual reports and other investment documents that the corporation delivered to the plaintiff were true and complete in all material respects.[81] Moreover, in the merger agreement signed by the plaintiff, the plaintiff attested that he had relied solely on the information in the annual reports and other investment documents as well as his own independent financial advisors in forming his opinions about the investment opportunity.[82] From this, the court in *Barken* concluded that the plaintiff's admitted reliance on only these documents and his advisor's opinions "constituted a prima facie showing that [plaintiff's] alleged reliance on the alleged misrepresentations about [defendant] . . . was not reasonable as a matter of law."[83]

The facts in *Barken* are clearly distinguishable from those here. Here, Plaintiffs have alleged that an employee of Fidelity, Priestley, made an affirmative representation that the Conditional

---

[79]  No. 136118, 2005 WL 1385325, at *1, 3 (Cal. Ct. App. June 13, 2005).

[80]  *Id.* at *3.

[81]  *Id.* at *4.

[82]  *Id.* at *5.

[83]  *Id.*

Letter of Guarantee was "an official letter from Wells Fargo and was signed by [Ron My] personally."[84] Plaintiffs at no time have alleged that they did not rely on Fidelity's alleged assurance. To the contrary, Plaintiffs have continuously maintained that were it not for Fidelity's alleged assurances that Ron My had personally confirmed the Conditional Letter of Guarantee, Plaintiffs would not have released the funds being held in escrow.[85]

Finally, Fidelity would have this Court reconsider its judgment on the basis of *Guido v. Koopman*, the only published case that Fidelity cites. Once again, however, the facts in the two cases are distinguishable. *Guido* involved an amateur horseback rider who was injured when she was thrown from a horse during horseback riding lessons at the defendant's horseback riding school.[86] Before undertaking her lessons, the plaintiff had signed a release, which released the defendant from any injury suffered while participating in horseback riding lessons on the school's premises.[87] The plaintiff claimed that the release was unenforceable, among other reasons, because the school owner had represented to her that the waiver was "meaningless."[88] Specifically, according to the plaintiff, the defendant told her that: "The waiver doesn't mean anything. It is something that I need to have you sign, because my insurance company won't let me give lessons unless I have people sign this . . . ."[89]

---

[84] Rec. Doc. 13 at 3.

[85] *See, e.g.,*, Rec. Doc. 65 at 3; Rec. Doc. 13 at 3.

[86] 2 Cal. Rptr. 2d at 437.

[87] *Id.* at 438.

[88] *Id.* at 440.

[89] *Id.*

In *Guido*, the court noted that "the reasonableness of the reliance is ordinarily a question of fact."[90] However, the court in *Guido* found it appropriate to decide that the plaintiff's reliance was unreasonable as a matter of law because of one telling fact: the plaintiff was a practicing attorney who "uses releases in her practice."[91] The court continued, "In essence, [plaintiff] is asking this court to rule that a practicing attorney can rely on the advice of an equestrian instructor as to the validity of a written release of liability that she executed without reading."[92] Under those circumstances, the court found it appropriate to "conclude as a matter of law that any such reliance [by plaintiff] was not reasonable."[93]

Contrary to the circumstances in *Guido*, the circumstances here do not support a finding by this Court that Plaintiffs' reliance was not reasonable as a matter of law. The inquiry is a fact-intensive one and necessitates an individualized, ad hoc analysis.[94] Among circumstances to be taken into consideration are (1) the knowledge; (2) education; and (3) experience of the person claiming reliance.[95] While Plaintiff Patel was no doubt a sophisticated party, it cannot be said that reliance upon an assurance given by a vice president of a reputable institution, Fidelity, was misplaced. Certainly that is not the case when the reliance was as specific as that given by Priestly to Ashok: that an official, Ron My, at another reputable financial institution, Wells Fargo, had confirmed by

---

[90] *Id.* (citing *Seeger v. Odell*, 18 Cal.2d 409, 414–15 (1941).

[91] *Id.*

[92] *Id.*

[93] *Id.* at 441.

[94] *Div. of Labor Law Enforcement v. Transpac. Trans. Co.*, 137 Cal.Rptr. 855, 861–62 ("[W]e note that the elements of . . . promissory estoppel call for factual determination and can be adjudicated only on an Ad hoc basis, by taking into consideration the peculiar facts presented by the individual case.").

[95] *Guido*, 2 Cal. Rptr. 2d at 440–41.

16

telephone that the Conditional Letter of Guarantee was from Wells Fargo and that My had personally signed the letter. The reasonableness of the reliance here quite clearly distinguishes this case from *Guido*, in which an attorney who used releases in her practice relied upon an equestrian instructor's representation that a release was "meaningless." This Court cannot conclude as a matter of law that Plaintiffs' reliance on Fidelity's representation was unreasonable. The facts here simply do not warrant removing this question from the fact finder's purview, as they did in *Guido*.[96]

### V. Conclusion

For the reasons stated above, the Court finds that it did not commit manifest error in denying Defendant Fidelity's motion to dismiss Plaintiffs' detrimental reliance claim on grounds that Plaintiffs' reliance was unreasonable as a matter of law. Under California law, the question of reasonable reliance is generally a question of fact. Defendant Fidelity has not carried its burden to show how this Court misapplied that statement of law to the particulars of this case. The new case law Fidelity cites does not support its argument that the reliance at issue here is so unreasonable as to make it appropriate to determine the issue as a matter of law.

---

[96] The matter is set for a bench trial; thus, a jury will not be determining this issue. *See* Rec. Doc. 1-1.

Accordingly,

**IT IS HEREBY ORDERED** that Fidelity's "Motion to Alter of Amend Judgment" pursuant to Federal Rule 59(e)[97] is **DENIED**.


**NEW ORLEANS, LOUISIANA**, this  6th  day of March, 2014.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[97] Rec. Doc. 63.

18