**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PREMIUM HOSPITALITY, L.L.C., et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0779** |
| **ASTRA CAPITAL FUNDING, et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Plaintiffs'"Motion for Summary Judgment,"[1] wherein Plaintiffs seek summary judgment on their sole remaining claim for promissory estoppel. After considering the complaint, the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A. Factual Background

Plaintiffs are Premium Hospitality, L.L.C. ('Premium Hospitality"), Kajal, Incorporated ("Kajal"), and Ashok Patel ("Patel") (collectively, "Plaintiffs").[2] Defendants are Astra Capital Funding, Inc. ("Astra"), John Burton Ramsey ("Ramsey"), Sandeep Nagin Patel ("Sandeep Patel"), BP Communications LTD ("BP"), World Trade Holdings, LLC ("World Trade"), and Fidelity.[3]

Patel acted as President of both Premium Hospitality and Kajal, which are both engaged in the hotel industry. In that capacity, Patel sought loans to finance specific projects concerning each corporation.[4] Patel contacted Mortgage Corp, whose agent was Defendant Sandeep Patel, who in

---

[1] Rec. Doc. 72.

[2] Rec. Doc. 26 at ¶ 3 (Amended Complaint).

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶ 5.

turn referred him to Astra. Plaintiffs claim that they reached an agreement with Astra, whereby Premium Hospitality would receive a $1,150,000.00 loan and Kajal would receive a $1,680,00.00 loan.[5] According to Plaintiffs, two letters of commitment, dated November 17, 2011, were drafted and signed by both parties, and a $200,000 escrow deposit for each loan was requested as a down payment.[6] Fidelity was designated to hold the escrow deposit funds.[7] On December 2, 2011, the escrow funds were wired to Fidelity, and the loans were scheduled to close on February 24, 2012.[8] However, according to Plaintiffs on December 6, 2011, Fidelity received a "Conditional Letter of Guarantee" purportedly from Ron My of Wells Fargo Bank, N.A., and the funds were released from the escrow account. Plaintiffs claim a $300,000 wire transfer was sent to BP and a $100,000 payment was sent to World Trade.[9] Ramsey signed the wire transfer. Plaintiffs claim that "[t]hese funds then subsequently disappeared."[10]

Plaintiffs claimed that "violations of law have occurred in this matter, and comprise fraud, breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, detrimental reliance, and failure to perform due diligence. Plaintiffs brought causes of action under the Louisiana Credit Agreement Statute,[11] and Louisiana Civil Code articles

---

[5] *Id.* at ¶ 6.

[6] *Id.*

[7] *Id.* at ¶ 7.

[8] *Id.*

[9] *Id.* at ¶ 8.

[10] *Id.*

[11] La. R.S. § 6:1122.

1983, 1759, and 1967,[12] specifically, for breach of fiduciary duty, promissory estoppel, and failure to perform due diligence.[13] All of these claims except for the promissory estoppel claim were dismissed on July 19, 2013 when the Court granted in part and denied in part Defendant Fidelity's "Motion to Dismiss Pursuant to Federal Rule 12(b)(6)."[14]

## B. Procedural Background

Plaintiffs filed the original complaint in this matter on March 23, 2012, invoking this Court's diversity jurisdiction.[15] On August 9, 2012, Fidelity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[16] Plaintiffs filed an opposition on September 4, 2012.[17] On March 6, 2013, this Court discovered certain pleading deficiencies that created some doubt as to whether this Court had subject matter jurisdiction. In response, the Court ordered Plaintiffs to file an amended complaint to properly allege the citizenship of all parties, and denied Defendants first motion to dismiss without prejudice, with leave to refile the motion after such time as the Court determined it had subject matter jurisdiction.[18]

---

[12] Rec. Doc. 26 at ¶ 9.

[13] *Id.* at ¶ 12.

[14] Rec. Doc. 46.

[15] Rec. Doc. 1. In the original complaint, Plaintiffs mistakenly claimed that jurisdiction "is proper under the diversity provision of 28 U.S.C. § 1345." *See id.* at ¶ 2. Plaintiffs correct this mistake in the amended complaint. *See* Rec. Doc. 26 at ¶ 2.

[16] Rec. Doc. 9.

[17] Rec. Doc. 13.

[18] Rec. Doc. 22.

3

On March 13, 2013, Plaintiffs filed an amended complaint.[19] Further, on March 28, 2013, Fidelity filed a memorandum in support of subject matter jurisdiction, alleging the citizenship of all parties and demonstrating complete diversity.[20] On that same day, Fidelity refiled their motion to dismiss.[21] Plaintiffs did not refile an opposition to this motion to dismiss, and the Court construed their opposition to Fidelity's first motion to dismiss as the opposition to the second motion to dismiss.[22] After reviewing the filings, complaint, and applicable law, the Court granted Fidelity's second motion to dismiss as to all claims except for promissory estoppel because "the existence of the elements of promissory estoppel is a question of fact."[23] Plaintiffs now asks the Court to grant summary judgment in their favor regarding that claim.[24]

## II. Parties' Arguments

### A. Plaintiffs' Arguments in Support of Summary Judgment

In support of the pending motion, Plaintiffs argue that they have shown that all four elements of promissory estoppel under California law have been met: that Fidelity (1) made a promise; (2) that Plaintiffs relied on that promise; (3) that Plaintiffs reliance was reasonable; and (4) that Plaintiffs were injured by this reliance.[25]

---

[19] Rec. Doc. 26.

[20] Rec. Doc. 27.

[21] Rec. Doc. 29.

[22] Rec. Doc. 46 at 4.

[23] *Id.* at 24.

[24] Rec. Doc. 72.

[25] Rec. Doc. 72-1 at 11.

First, Plaintiffs argue that Fidelity made a clear and unambiguous promise when Fidelity asserted that the conditional letter of guarantee purportedly from Ron My of Wells Fargo was "in fact, an official letter from Wells Fargo."[26]

Second, Plaintiffs argue that Plaintiffs relied on Fidelity's promise that the letter was from Wells Fargo because Patel believed that the conditional letter of guarantee purportedly from Ron My "provided a secure counter balance to his deposited funds."[27] Furthermore, Plaintiffs point to Patel's testimony that he relied on the representation of Natalie Priestly of Fidelity that the conditional letter of guarantee was authentic.[28]

Third, Plaintiffs argue that their reliance was reasonable. Plaintiffs assert that:

Patel refused to release his funds as he knew that the counterbalance of a valid letter of guarantee provided the best protection for his interest to obtain the loan. In fact, securing a valid letter of guarantee was the only means available to protect his interest. Patel had good reason to not release his funds prematurely.[29]

Thus, Plaintiffs reason that Patel acted reasonably by not releasing his funds until he had assurance from Fidelity that the conditional letter of guarantee was authentic.[30] Along these same lines, Plaintiffs also assert that Patel's reliance was foreseeable.[31] Plaintiffs argues that "[t]he reliance was

---

[26] *Id.* at 12.

[27] *Id.* at 13.

[28] *Id.*

[29] *Id.* at 15.

[30] *Id.* at 15–16.

[31] *Id.* at 16.

foreseeable as Patel believed he was dealing with legitimate loan providers who had provided a valid letter of guarantee."[32]

Finally, Plaintiffs assert that they suffered injury because Plaintiffs were defrauded out of $400,000 that Patel released to Defendants Sandeep Patel and John Ramsey.[33]

### B. Defendant Fidelity's Arguments in Opposition to Summary Judgment

Fidelity first argues that Patel did not rely on its representation but rather on the representations of a person posing as Ron My, whom Patel called prior to releasing the funds.[34] Fidelity quotes from Patel's deposition in which he stated, "After I received an e-mail from Natalie [Priestly], I called Ron My after that, to make sure, you know, that she called the person, and I'm getting the same person. I need to make sure, you know . . . ."[35] Based on this argument, Fidelity concludes that "[a]t a minimum, there is a disputed issue of fact regarding whether Plaintiffs relied on Fidelity. Therefore, this Court should deny Plaintiffs' motion for summary judgment."[36]

Fidelity further argues that there is a disputed issue of material fact as to whether Plaintiffs' reliance was reasonable.[37] Fidelity notes that "[t]he Escrow Agreement between Fidelity, Plaintiff, and Astra specifically informed Plaintiff that Fidelity is not accountable or liable for the sufficiency or correctness of any of the instruments deposited in escrow."[38] Fidelity also points out that Patel

---

[32] *Id.* at 16.

[33] *Id.*

[34] Rec. Doc. 74 at 11.

[35] *Id.*

[36] *Id.* at 12.

[37] *Id.*

[38] *Id.* at 15.

was informed multiple times that Fidelity's agents could not verify Ron My's identity, had had no prior dealings with Ron My, and did not know Ron My, and further, that it was not Fidelity's role to verify My's identity or verify the authenticity of the conditional letter of guarantee.[39] Fidelity also argues that the circumstances surrounding Patel's business dealings with Ramsey and Sandeep Patel made Plaintiffs' reliance unreasonable:

> For instance, Plaintiff entered into a Brokerage Contract in which he agreed to pay Sandeep Patel a sum in the amount of **75% to 80% of the total loan amount** for his brokerage services. Plaintiff is a sophisticated businessman, who has owned various hotels and has [sic] who knows that the typical brokerage fee is only approximately 1%. A brokerage fee of 75% to 80%—i.e., a fee of $2,122,500 to $2,264,000 owed to Mortgage Corp., **on top of** the $2,830,000 in loans owed to the lender—should have raised significant concerns for Plaintiff, yet he never questioned that fee and never discussed the 75% to 80% brokerage fee with Sandeep Patel.[40]

Also making Plaintiffs' reliance unreasonable, according to Fidelity, is that Patel had been previously rejected for a loan at least a dozen times and yet Ramsey and Sandeep Patel offered Patel favorable loan terms in the amount of $2.8 milllion.[41] Moreover, Patel, according to Fidelity, "also did not question the requirement that **he** place $400,000 in escrow to have the loans funded by Astra—a loan transaction process that he had never experienced in his other financial transactions."[42]

Finally, Fidelity also asserts that Plaintiffs were unreasonable in relying on Fidelity's opinion that the conditional letter of guarantee was authentic when Patel made no investigation into the

---

[39] *Id.*

[40] *Id.* at 16.

[41] *Id.*

[42] *Id.*

matter before releasing the funds.[43] According to Fidelity, "**any** cursory investigation into the Letter of Guarantee to determine if it was authentic" would have revealed to Patel that "the Letter of Guarantee was fake" because he easily found this out when he did an investigation **"after** he had agreed to release the Escrow Funds."[44] According to Fidelity, "[a] local branch manager at Wells Fargo determined immediately that the Letter of Guarantee was a forgery after the Escrow Funds were released just by looking at the logo on the letterhead" and Patel could have found out the same if he would have "went to a Wells Fargo branch before he agreed to release the Escrow Funds."[45] Additionally, according to Fidelity, Patel "found the real Ron My easily on Wells Fargo's website, but [Patel] never even checked the Wells Fargo website for Ron My before releasing the Escrow Funds."[46] Thus, Fidelity maintains that there is a disputed issue of material fact as to whether Plaintiffs' reliance was reasonable.[47]

### III. Law and Analysis

*A.    Standard on Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] When assessing whether a dispute as to any material fact exists, the court

---

[43]  *Id.* at 17.

[44]  *Id.*

[45]  *Id.*

[46]  *Id.*

[47]  *Id.*

[48]  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[49] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[50] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[51]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact.[52] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[53] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[54] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[55]

---

[49] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[50] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[51] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[52] *Celotex*, 477 U.S. at 323.

[53] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991).

[54] *Id.* at 1265.

[55] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

**B. Whether There is a Disputed Issue of Material Fact Regarding Whether Plaintiffs Relied on Fidelity's Representation**

Fidelity raises as a disputed issue of material fact whether Patel relied on the representation of Natalie Priestly, a Fidelity agent. While both parties agree that Patel contacted both Priestly and a person purporting to be Ron My, the parties disagree as to whether Patel relied on the representation of Priestly, My, or both in deciding to release the escrow funds. This fact is material because if Patel, in fact, only relied on the representation of the person purporting to be Ron My, who told Patel that the conditional letter of guarantee was authentic, then Patel will not be able to show that he relied on the representations of Priestly or any other Fidelity agent, which is a required element of a claim for promissory estoppel under California law.[56] Conversely, if Patel shows that he did rely on Priestly's representation, then he will have satisfied this element of a cause of action for promissory estoppel.

Here, it cannot be said that no reasonable fact-finder could not find that Patel relied on the representation of the imposture Ron My and not Fidelity agent Natalie Priestly. Plaintiffs do not point to evidence that conclusively demonstrates that Plaintiff relied on Priestly's representations in deciding to release the funds. While Plaintiff's point to Patel's deposition testimony where he stated, "If I had not received confirmation from [Priestly] I would have never signed the documents to release the funds from the escrow Account,"[57] Fidelity points to another portion of Patel's deposition in which he stated the he called the imposture Ron My to verify My's identify even after speaking with Priestly because he wanted to "make sure."[58] A reasonable fact-finder could conclude

---

[56] *See, e.g., U.S. Ecology, Inc. v. State,* 28 Cal. Rptr.3d 894, 905 (2005) (listing the elements of promissory estoppel).

[57] Rec. Doc. 72-1 at 13.

[58] Rec. Doc. 74 at 11.

from this evidence that even without Priestly's representation that the conditional letter of guarantee was authentic, Patel would have still released the funds after being told by the imposture Ron My that the letter was authentic. Thus, by pointing to the above portion of Patel's deposition testimony, Defendant has countered with evidence sufficient to create a genuine issue of fact as to whether Patel relied on Priestly's representations. This disputed issue of material fact precludes the Court from granting summary judgment in Plaintiff's favor.

**C. Whether There is a Disputed Issue of Material Fact Regarding Whether Plaintiffs were Reasonable to Rely on Fidelity's Representation**

Fidelity also argues that there is a disputed issue of material fact as to whether Plaintiffs were reasonable in their reliance on Natalie Priestly's representation about the conditional letter of guarantee. Like the previous fact, this fact is material because it is an essential element of a claim for promissory estoppel.[59] If Plaintiffs were not reasonable in relying on Priestly's representation, then Plaintiffs cannot recover for promissory estoppel against Fidelity because they will have failed to satisfy one of the elements of promissory estoppel. Accordingly, for Plaintiffs to succeed on their motion for summary judgment, they must show that the evidence is such that a reasonable fact-finder could only determine that Patel's reliance was reasonable.

Here, ample evidence pointed to by Fidelity shows that a reasonable fact-finder could determine that Patel's reliance, in fact, was not reasonable. Evidence put forth by Fidelity indicates several features about the transaction that a reasonable fact-finder could determine should have alerted Patel to the possibility of fraud. First, Patel was given reasonable terms on a loan approaching $3 million dollars even though he had been declined for loans by at least a dozen

---

[59] *Id.*

11

financial institutions. Additionally, Ramsey and Sandeep Patel, the alleged con artists, asked Patel to pay a brokerage fee of up to 80% of the loan's value when the customary fee charged for such services is 1%. Finally, Ramsey and Sandeep Patel requested that Patel place $400,000 in escrow, an arrangement that Patel stated he had never encountered before in his business dealings.

Additionally, a reasonable finder of fact could also conclude that Plaintiffs' reliance was not reasonable because Patel failed to properly investigate the loan, such as by contacting Ron My through Wells Fargo in order to ensure that this Ron My was who he said he was or by verifying the authenticity of the conditional letter of guarantee at a Wells Fargo branch, as Patel did following release of the funds. Again, this is not to say that Plaintiffs failed to act reasonably in relying on Priestly's representation, but only that a reasonable finder of fact could conclude that Plaintiffs were not reasonable considering the other information Plaintiffs already knew. Thus, the question of whether Plaintiffs' reliance was reasonable is also a disputed issue of material fact, precluding the Court from granting summary judgment in Plaintiffs' favor at this time.

## V. Conclusion

For the reasons stated above, the Court finds that there are disputed issues of material fact that preclude the Court from granting summary judgment in Plaintiffs' favor at this time. Under California law, to recover under promissory estoppel, a plaintiff must show four elements, two of which are in dispute here: (1) whether Plaintiffs' relied on Fidelity's representation; and (2) whether Plaintiffs were reasonable in their reliance if they did, in fact, rely on Fidelity's representation. Plaintiffs have not carried their burden to show that no reasonable fact-finder could find for Fidelity on either of these issues. The evidence put forth by Plaintiffs is not so conclusive as to show that a reasonable fact-finder could only find that Plaintiffs relied on Fidelity's promise and that Plaintiff's

reliance was reasonable. Moreover, Fidelity has put forth ample evidence to show that there is a genuine dispute as to these two material facts. Accordingly,

**IT IS HEREBY ORDERED** that Fidelity's "Motion for Summary Judgment" is **DENIED**.[60]

**NEW ORLEANS, LOUISIANA**, this  28th day of July, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[60] Rec. Doc. 72.